2016 IL App (1st) 133812
No. 1-13-3812
Opinion filed June 17, 2016

<u>FIFTH DIVISION</u>

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 12 CR 5877 |
| ANTONIO WILLIAMS, | ) ) | The Honorable James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Lampkin and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    After a bench trial, defendant Antonio Williams was found guilty and sentenced to concurrent 14-year terms each for armed robbery and aggravated vehicular hijacking, and to an additional concurrent 5-year term for aggravated unlawful restraint.

¶ 2  On this direct appeal, both defendant and the State ask this court to reinstate defendant's negotiated plea agreement. Prior to defendant's bench trial, the trial court had already accepted defendant's guilty plea and sentenced defendant pursuant to a negotiated plea agreement between defendant and the State. Without first vacating the guilty plea, the trial court directed the parties to proceed to trial. After the bench trial, defendant was convicted of more offenses and received a higher sentence. For the following reasons, we reinstate the plea agreement and correct the mittimus to reflect the negotiated sentence.

¶ 3          BACKGROUND

¶ 4  An indictment charged defendant with two counts of armed robbery, two counts of vehicular hijacking, possession of a stolen motor vehicle, burglary, and two counts of aggravated unlawful restraint. The indictment alleged that, on January 11, 2012, defendant forcibly took money and a vehicle from James Cooper. Separate counts alleged that the offenses were committed with a firearm and with a dangerous weapon other than a firearm. Defendant who was born on March 13, 1993, was 18 years old at the time of these offenses.

¶ 5  On March 5, 2013, defendant requested a Rule 402 conference which was held and then continued to March 20, 2013. Ill. S. Ct. R. 402 (eff. July 1, 1997) (governing plea negotiations and guilty pleas). On March 20, 2013,

defendant pled guilty to counts II and IV, which were for armed robbery and aggravated vehicular hijacking.

¶ 6    Count II of the indictment charged defendant with armed robbery with a dangerous weapon other than a firearm, "to wit: a bludgeon," in violation of section 18-2(a)(1) of the Criminal Code of 1961 (720 ILCS 5/18-2(a)(1) (West 2010)).[1] Concerning the sentence for this offense, the statute states: "Armed robbery in violation of subsection (a)(1) is a Class X felony." 720 ILCS 5/18-2(b) (West 2010).[2] For a Class X felony, "[t]he sentence of imprisonment shall be a determinate sentence of not less than 6 years and not more than 30 years." 730 ILCS 5/5-4.5-25(a) (West 2010).[3]

¶ 7    For count IV, defendant was charged with aggravated vehicular hijacking with a dangerous weapon, other than a firearm, "to wit: a bludgeon," in violation of section 5/18-4(a)(3) of the Criminal Code of 1961. 720 ILCS 5/18-

---

[1]The Criminal Code of 2012 did not take effect until January 1, 2013, which was almost a year after the alleged offense was committed. However, this particular statutory section has been in effect, unchanged, since January 1, 2000.

[2]This statutory language has also been in effect, unchanged, since January 1, 2000.

[3]This quote is the same as in the current statute which took effect on June 22, 2012. 730 ILCS 5-4.5-25(a) (West 2014).

4(a)(3) (West 2010).[4] Concerning the sentence, the statute provides: "Aggravated vehicular hijacking in violation of subsection (a)(3) is a Class X felony for which a term of imprisonment of not less than 7 years shall be imposed." 720 ILCS 5/18-4(b) (West 2010).

¶ 8    During the plea hearing, the State presented a factual basis for the two offenses, and the trial court found defendant guilty on those two counts, stating: "I find there's a factual basis for the plea. I find him guilty on Counts 2 and 4. Judgment's [*sic*] entered on the findings." The State then nol-prossed the remaining counts. When discussing factors in mitigation and aggravation, the assistant State's Attorney (ASA) observed that defendant had no adult criminal history but that he had three juvenile delinquency adjudications for battery.[5]

¶ 9    After listening to factors in aggravation and mitigation, the trial court stated:

"THE COURT: The government has agreed to dismiss the charges involving the firearms–there was an understanding that the defense–

---

[4]For a discussion of amendments to section 18-4, which is "Aggravated Vehicular Hijacking," please see footnote 8.

[5]The presentence report indicated only two adjudications of delinquency, but that one of the adjudications was based on two counts.

based on a plea of guilty, Counts 2 and 4 will be 12 years in the penitentiary.

DEFENSE COUNSEL: That's correct, [Y]our Honor.

THE COURT: I will follow that agreement between the parties. I find it within the realm of reason. Credit for 425 days served. Statutory DNA ordered. Over the defense objection, costs will be satisfied by the time served."

¶ 10    After stating to the defendant that "you've plead guilty and been sentenced," the trial court then admonished defendant concerning his appeal rights, including the requirement to file a written motion if he wanted to withdraw his plea. The trial court then asked defendant if he had "any questions at all," and defendant responded:

"DEFENDANT: I'd like to say something.

THE COURT: Sure.

DEFENDANT: People who rape little girls get lesser time than I'm getting. I'm getting sentenced for time that people get for trying to kill people. A man can shoot a man in the leg, and his case will be a 4 to 15.

THE COURT: This is very simple. If you don't want to do this, I'll withdraw–let you withdraw the plea right now. And I'll set you down for trial.

DEFENDANT: Just give me the time though. It's already been done.

THE COURT: You can undo this. Just relax. It's not personal. I don't know you. They tell me–you're pleading guilty to jacking cars from people.

DEFENDANT: I'm just saying–at 85 percent off my adult case though. It's plenty of kids running around here right now my age caught on attempt murder and comped (sic)[6] out and got 13 at 85, 12 at 85. I'm getting the same amount of the time I can get for shooting somebody, Joe.[7]

I didn't kill nobody and shoot nobody. I didn't hit this man.

THE COURT: Did you do the car jacking? You don't have to resolve this. If you think this is too much and unfair, we'll have a trial. It doesn't matter to me.

---

[6]The "(sic)" is present in the original transcript.

[7]"Joe" is also in the original transcript.

6

DEFENDANT: They got they [*sic*] time without a trial though. Why should I have to go through a trial to get something lowered.

THE COURT: If you don't think–

DEFENDANT: Why.

THE COURT: –they can prove you guilty beyond a reasonable doubt–

DEFENDANT: Maybe if I would have touched a little girl and got lesser time than this.

THE COURT: Do you want to withdraw your plea? It's okay with me. I see you're upset. You're not happy with the agreement. You don't have to agree.

DEFENDANT: I'm not, definitely not man.

THE COURT: Well, you can have a trial–would you rather–you want to think about it? *** This is what we're going to do. I'm going to bring you back here in a couple days. Let you think this through. If you want to withdraw your plea, I will let you withdraw your plea. I will absolutely do that. *** So I'm going to accept the plea. I'm going to vacate the sentence now. And we'll go to sentencing in a couple days or we're going to withdraw this plea and start fresh."

¶ 11 As the lawyers started discussing a date for the continuance, defendant interjected and the following exchange occurred:

"DEFENDANT: I'll take the time. Judge, if I want to see the day of light again, I want to be out before my great grandmother pass because she real old right now. Just because of that. I'll take that time.

THE COURT: Okay. Put this over till Friday.

DEFENSE COUNSEL: Thank you.

THE COURT: I'm going to bring you back Friday. And I want you to think about this because you're emotional and you're [a] young guy. And I want you to have a chance to think about this and think about exactly what you are doing."

¶ 12 Defendant never filed a motion to withdraw his plea. However, on March 22, 2013, which was the next court date, defense counsel requested a fitness examination and the trial court entered the following two orders.

¶ 13 The first order was entitled a "Consolidated Referral Order," and it directed the "Forensic Clinical Services of the Circuit Court" to evaluate defendant for his fitness to stand trial, his sanity and his ability to understand his *Miranda* rights.

¶ 14 The second order stated:

"This cause before the Court, the Court fully advised it is hereby ordered:

(1) Defendant is incarcerated in Juvenile IDOC custody. Defendant has previously been diagnosed with Bi-polar disorder, ADHD and anger issues since the age of seven (7) and hospitalized for the same.

(2) Juvenile IDOC shall evaluate and prescribe medications, if medically entered.

It is so ordered."

¶ 15        On June 10, 2013, a psychologist filed a letter with the trial court stating that he had examined defendant and concluded that defendant was fit to stand trial. In a subsequent letter, dated July 24, 2013, the same psychologist concluded that defendant was "legally sane at the time of the alleged offense" and "was able to understand the Miranda warnings at the time of his arrest."

¶ 16        After the resolution of the fitness issue, the parties appeared in court on July 24, 2013, and the following exchange occurred:

"THE COURT: Bench or jury?

DEFENDANT: I am taking my time.

DEFENSE COUNSEL: I don't understand. Do you want to plead guilty?

DEFENDANT: Yeah, I will plead guilty.

DEFENSE COUNSEL: As the Court is aware, we previously attempted–

THE COURT: We conferenced this?

DEFENSE COUNSEL: Yes, we did. We were in the middle of a plea.

THE COURT: Does this require a reducer or an amendment from the Government?

ASA: Give me one moment.

DEFENSE COUNSEL: Why don't we pass on it?

THE COURT: We can do it.

DEFENSE COUNSEL: Judge, I believe it was on Count–

THE COURT: Was it Count 2?

ASA: Judge, I show it was for Count 2 and Count 4.

THE COURT: Are you still willing to conference and–

ASA: Yes, Judge.

THE COURT: –move forward on those two counts?

ASA: Yes, Judge."

¶ 17    The case was then passed and recalled. Although the ASA had indicated before the break that the State was willing to "move forward" on the two counts of the plea agreement, when the parties returned the ASA stated that the State no longer wished to adjust the charges:

"THE COURT: There had previously been a 402 conference. The Government had been willing to adjust some of the charges. A plea did not go down on the last court date.

ASA: It's not going down at all.

THE COURT: The Government does not wish to adjust the charges anymore. That is their right.

DEFENSE COUNSEL: There's an amendment to aggravated vehicular hijacking with a firearm.[8] That was to be removed. That

---

[8]It is unclear what amendment defense counsel is referring to. Defendant committed the offense on January 11, 2012. There were no amendments to the aggravated vehicular hijacking statute (720 ILCS 5/18-4 (West 2014)) between January 1, 2000, and January 1, 2013. Effective January 1, 2013, the statute was amended only to make grammatical changes. Thus, for example, instead of stating "[a]ggravated vehicular hijacking in violation of subsection (a)(3)," the statute was edited down to read simply "a violation of subsection (a)(3)." Compare 720 ILCS 5/18-4 (West 2010) (eff. Jan. 1, 2000), with 720 ILCS 5/18-

provision has since gone out, meaning that it would be prohibited to assign a 12 year sentence in exchange for the plea to armed robbery and agg. [*sic*] vehicular hijacking. The minimum would consequently now [be,] if the defendant were interested in pleading, which he is not, 21 [years]."

¶ 18 During the above-quoted exchange, the trial court stated: "A plea did not go down on the last court date." However, defendant's guilty plea was, in fact, taken and accepted by the trial court and never vacated. Also, the other counts were nol-prossed by the State on the prior date.

¶ 19 The trial court then inquired whether discovery was complete, and the ASA stated that it was. The trial court then asked "[b]ench or jury?" and defense counsel responded "[b]ench." The trial court and the attorneys then set the case for trial on September 9, 2013. However, on September 9, 2013, the State failed to bring defendant, who was in custody, to the courthouse, so the trial was continued by agreement to October 2, 2013.

¶ 20 On October 2, 2013, defendant signed a written waiver waiving his right to a jury, and a bench trial began. At the conclusion of the State's case on

4 (West 2014) (eff. Jan. 1, 2013). In any event, defendant pled guilty after the amendment was made which implemented these grammatical changes.

October 17, 2013, defendant moved for a direct finding and the trial court granted his motion with respect to counts I, III and VII, which all alleged the use of a firearm. After hearing argument, the trial court found defendant guilty of: count II, armed robbery with a dangerous weapon other than a firearm; count IV, aggravated vehicular hijacking with a dangerous weapon other than a firearm; count V, possession of a stolen motor vehicle; count VI, burglary; and count VIII, aggravated unlawful restraint with a dangerous weapon other than a firearm. The trial court then stated that "Counts 5 and 6 will merge into Count 4," and that "Count 8 will merge into counts 2 and 4."

¶ 21    On November 18, 2013, defense counsel filed a posttrial motion which claimed, among other things, that count VIII, for unlawful restraint, should not have resulted in a separate conviction. The trial court had announced at the end of the bench trial that the count would merge with counts II and IV.

¶ 22    After denying this posttrial motion, the trial court sentenced defendant on November 18, 2013, to concurrent 14-year terms each for count II, armed robbery, and count IV, aggravated vehicular hijacking, and to an additional concurrent 5-year term for count VIII, aggravated unlawful restraint. The trial court stressed that "[a]ll sentences will run concurrently." As the trial court had previously stated on October 17, 2013, the trial court repeated that it merged

count V, for possession of a stolen motor vehicle, and count VI, for burglary, into count IV, which was for aggravated vehicular hijacking.[9]

¶ 23    However, the trial court's pronouncement on November 18, conflicts with its pronouncement on October 17, because on October 17, it stated that count VIII would merge into two other counts, while on November 18, it issued a sentence for count VIII. Defense counsel asked for leave to file a motion to reconsider the sentence, and the trial court replied: "That's timely filed, respectfully denied." As a result, no written motion was filed.

¶ 24    Defendant filed a notice of appeal on November 18, 2013, and this appeal followed.

¶ 25                                   ANALYSIS

¶ 26    On appeal, both the State and the defense ask this court to reinstate the negotiated plea agreement. In support, defendant argues: (1) that the trial court's decision to ignore the plea violated his rights under the double jeopardy clause; and (2) in the alternative, that the trial court abused its discretion, because it disregarded defendant's wish to keep his plea and because the vacatur of judgment lacked any substantive or procedural basis.

_____

[9]Counts I, III and VII were all previously dismissed after defendant moved for a directed finding at the close of the State's case on October 17, 2013.

¶ 27    If this court does not reinstate the plea agreement, defendant also argues in the alternative: (1) that his convictions for armed robbery and aggravated vehicular hijacking should be reduced to simple armed robbery and vehicular hijacking; and (2) that his conviction for aggravated unlawful restraint should be vacated under the one act, one crime rule, because it arises from the same physical act as his convictions for armed robbery and aggravated vehicular hijacking.

¶ 28    In response, the State's appellate brief contains only one point heading, which states: "The People agree that defendant's negotiated guilty plea was improperly vacated by the trial court, and the original plea and sentence should be reinstated." In its brief, the State agrees with defendant that double jeopardy attached to defendant's guilty plea and thus barred defendant's subsequent bench trial. The State does not address defendant's alternative basis for restoring the plea agreement, which was that the trial court simply abused its discretion. The State also does not address defendant's arguments in the alternative that his convictions should be reduced and that his conviction for aggravated unlawful restraint should be vacated.

¶ 29    For the following reasons, we agree with the parties that the plea agreement should be restored and we correct the mittimus, entered on

November 18, 2013, to reflect convictions for only counts II and IV with concurrent sentences of only 12 years each.

¶ 30    First, we vacate the conviction and sentence on count VIII which conflicted, not only with the first sentence entered by the trial court on March 20, 2013, but also with the trial court's oral pronouncement after the bench trial on October 17, 2013, and with the fact that the State had already nol-prossed this same count on March 20, 2013. A *nolle prosequi* by the State "leaves the matter in the same condition as before the prosecution commenced." *People v. Hughes*, 2012 IL 112817, ¶ 23. In order to reinstate a nol-prossed charge, the State must either commence a new proceeding or move to vacate the *nolle prosequi* order and reinstate the original charges, prior to a final judgment and in the absence of any applicable constitutional or statutory limitations. *Hughes*, 2012 IL 112817, ¶¶ 24-25. In the case at bar, the State did neither. Thus, after the State nol-prossed count VIII on March 20, 2013, this count was no longer pending before the trial court. As a result, we vacate the conviction and sentence on count VIII.

¶ 31    As for counts II and IV, defendant does not seek to challenge his convictions for them, so long as he receives his agreed-upon sentence. All he and the State are seeking on this appeal, with respect to these two counts, is a

two-year reduction in his sentence. Ill. S. Ct. R. 615(b) ("On appeal the reviewing court may *** reduce the punishment imposed by the trial court ***."). See also *People v. Sanderson*, 2016 IL App (1st) 141381, ¶ 15 (remand is unnecessary, because the appellate court has the authority to direct the clerk of the circuit court to correct the mittimus); *In re N.H.*, 2016 IL App (1st) 152504, ¶ 3; *People v. Thompson*, 2016 IL App (1st) 133648, ¶ 54 ("This court has the authority to order the clerk to correct the mittimus without remand."); *People v. Green*, 2016 IL App (1st) 134011, ¶ 40 (ordering the mittimus corrected to reflect the fact that the trial court had previously merged one count into another).

¶ 32        For the following reasons, we decline to decide this sentencing issue on double jeopardy grounds, as both parties request. Our supreme court has repeatedly instructed its appellate courts to reach constitutional issues only as a last resort. In *In re E.H.*, 224 Ill. 2d 172, 178 (2006), for example, our supreme court cautioned:

> "We have repeatedly stated that cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort. [Citations.] Yet our admonitions on this topic seem to fall not infrequently on deaf ears. The situation has become so

untenable that we have recently taken the somewhat extraordinary step of adding to our rules a requirement that before deciding a case on constitutional grounds, the court must state, in writing, that its decision cannot rest upon an alternate ground. [Citation.] We have also spelled out that we may 'summarily vacate and remand' any circuit court judgment which fails to comply with this or any other provision of our new Rule 18."

¶ 33    Illinois Supreme Court Rule 18 provides, in relevant part, that a court must state "that the finding of unconstitutionality is necessary to the decision or judgment rendered, and that such decision or judgment cannot rest upon an alternate ground." Ill. S. Ct. R. 18(c)(3) (eff. Sept. 1, 2006).

¶ 34    Nonetheless, both parties in the case at bar plunge first and foremost into constitutional waters. We will not make the same mistake.

¶ 35    In the case at bar, defendant stated to the trial court that he thought his negotiated sentence was excessive, although he also stated repeatedly that he wanted to take this "time." Illinois Supreme Court Rule 604 governs what a defendant, who thinks his sentence is excessive, must do to challenge his sentence:

"No appeal shall be taken upon a negotiated plea of guilty challenging the sentence as excessive unless the defendant, within 30 days of the imposition of sentence, *files a motion to withdraw the plea* of guilty and vacate the judgment. For purposes of this rule, a negotiated plea of guilty is one in which the prosecution has bound itself to recommend a specific sentence, or a specific range of sentence, or where the prosecution has made concessions relating to the sentence to be imposed and not merely to the charge or charges then pending. The motion shall be in writing and shall state the grounds therefor." (Emphasis added.) Ill. S. Ct. R. 604(d) (eff. Feb. 6, 2013).[10]

¶ 36    Illinois Supreme Court Rule 604 then specifies what his or her defense counsel must do:

"The defendant's attorney *shall file with the trial court a certificate* stating that the attorney has consulted with the defendant *** to ascertain defendant's contentions of error in the sentence or the entry of the plea of guilty, has examined the trial court file and report of the proceedings of

---

[10]This quoted portion of the rule is still the same as when defendant pled guilty on March 20, 2013. Compare Ill. S. Ct. R. 604(d) (eff. Mar. 8, 2016), with Ill. S. Ct. R. 604(d) (eff. Feb. 6, 2013).

the plea of guilty, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." (Emphasis added.) Ill. S. Ct. R. 604(d) (eff. Feb. 6, 2013).[11]

¶ 37 Generally, the decision whether to allow a defendant to withdraw a guilty plea pursuant to Illinois Supreme Court Rule 604(d) is left to the sound discretion of the trial court; and we will not reverse this decision on appeal absent an abuse of that discretion. *People v. Maxey*, 2015 IL App (1st) 140036, ¶ 42 (citing *People v. Hughes*, 2012 IL 112817, ¶ 32). "An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41. However, this deferential standard of review is premised on the assumption that defendant has, in fact, moved the trial court to withdraw his or her guilty plea in accord with Rule 604(d).

¶ 38 In the case at bar, there was no written motion by defendant and no certificate filed by defense counsel, as Rule 604(d) requires. There was not even

---

[11]This quoted portion of the rule is still substantially the same as when defendant pled guilty. However, today the rule permits a defense counsel to consult with his or her client "either by phone, mail, electronic means or in person," whereas in 2013 it stated that he or she must consult "either by mail or in person." Compare Ill. S. Ct. R. 604(d) (eff. Mar. 8, 2016), with Ill. S. Ct. R. 604(d) (eff. Feb. 6, 2013).

a formal decision by the trial court to vacate the earlier plea. The parties and the trial court proceeded upon the mistaken recollection that the guilty plea had not been taken when, in fact, it had been.

¶ 39    On March 20, 2013, during the plea hearing, the State presented a factual basis for the two offenses, and the trial court found defendant guilty on those two counts, stating: "I find there's a factual basis for the plea. I find him guilty on Counts 2 and 4. Judgment's [*sic*] entered on the findings." The trial court then sentenced defendant pursuant to the agreement and stated to defendant that "you've plead guilty and been sentenced." Even after defendant complained that his sentence was excessive, the trial court still ruled: "I'm going to accept the plea." Nonetheless, on July 24, 2013, the trial court stated: "A plea did not go down on the last court date." However, defendant's prior guilty plea had been taken and accepted by the trial court and was never formally vacated. The trial court's simple disregard of the prior plea was an abuse of discretion. "When a court is required by law to exercise its discretion, the failure to do so may itself constitute an abuse of discretion, precluding deferential consideration on appeal." *Seymour*, 2015 IL 118432, ¶ 50 (where "no discretion was exercised," no deferential review is warranted).

¶ 40    A trial court may set aside or withdraw a guilty plea on its own motion, and without defendant's consent, when the court has good reason to doubt the truth of the plea. *People v. Cabrera*, 402 Ill. App. 3d 440, 451 (2010) (citing *People v. Hancasky*, 410 Ill. 148, 154-55 (1951)). However, no one on this appeal–neither the State nor the defense–has called into question the truth of the plea. Defendant did not even protest his innocence before the trial court. Thus, this exception is not applicable to this appeal and does not alter our conclusion that an abuse of discretion, or a failure to exercise discretion, occurred in this case.

¶ 41                            CONCLUSION

¶ 42    In sum, we correct the mittimus, entered by the trial court on November 18, 2013, to reflect convictions for only counts II and IV and to reflect concurrent sentences for these two counts of only 12 years each.

¶ 43    First, we vacate the conviction and sentence on count VIII which conflicted: (1) with the first sentence entered by the trial court on March 20, 2013; (2) with the trial court's oral pronouncement after the bench trial on October 17, 2013; and (3) with the fact that the State had already nol-prossed this same count on March 20, 2013.

¶ 44    Second, we affirm defendant's convictions on counts II and IV, but

reduce his concurrent sentences for these two counts from 14 years to 12 years.

¶ 45                    Affirmed in part; reversed in part; mittimus corrected.